## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Shawn W. White,<br>　　Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv803 (LO/IDD) |
| | ) | |
| Deputy Sheriff Todd, *et al.*, | ) | |
| 　　Defendants. | ) | |

### MEMORANDUM OPINION

Shawn White, a Virginia inmate, has filed a civil action under 42 U.S.C. § 1983, claiming that his Fourteenth Amendment rights were violated while he was confined at Norfolk City Jail as a pretrial detainee. *See* Dkt. Nos. 1, 13. The amended complaint brings three claims for relief: (1) Deputy Sheriffs Ledrick Lackey and Erik Shildt applied excessive force on May 13, 2019; (2) afterwards, Deputies Lackey and Shildt acted with deliberate indifference to his serious medical needs; and (3) on June 7, 2019, Deputy Sheriff Thomas Todd, Officer Aaron Brooks, and Officer Tice[1] applied excessive force. *See* Dkt. No. 13. He seeks $250,000 from each defendant. *Id.* Defendants Lackey, Todd, and Brooks jointly move for summary judgment. *See* Dkt. No. 26. Separately, Shildt also moves for summary judgment. *See* Dkt. No. 43. These

---

[1] The Court has been unable to serve Officer Tice on White's behalf. By Order dated October 7, 2021, the Court ordered Deputy Lackey, Deputy Todd, and Officer Brooks—who by then had entered an appearance in this action—to provide a forwarding address for Tice. *See* Dkt. No. 24. They responded that there is no record of an Officer Tice working for the Norfolk Sheriff's Office. *See* Dkt. No. 25. Then, in an Order dated November 5, 2021, the Court directed White to provide additional identifying information about who he had named as "Officer Tice" in the amended complaint. *See* Dkt. No. 30. The Court further warned White that if he could not provide more information about that defendant, the officer may be dismissed without prejudice under Federal Rule of Civil Procedure 4(m). *See Boone v. Moore*, 844 F. App'x 667, 668 (4th Cir. 2021). White has not responded to this Court Order. Therefore, the claims against Officer Tice will be dismissed without prejudice. *See* Fed. R. Civ. P. 4(m).

defendants have provided White, a *pro se* litigant, with the notice required by Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), *see* Dkt. Nos. 28, 45, and White has filed nothing in opposition. Because the undisputed evidence demonstrates that on May 13, 2019, neither Lackey nor Shildt used force that was objectively unreasonable, and that White failed to exhaust his administrative remedies with respect to the June 7, 2019, incident, the Court will grant defendants' motions for summary judgment.[2]

## I. Background

### A) The Amended Complaint

In the unverified, amended complaint White claims that the defendant-officers violated his Fourteenth Amendment rights on May 13, 2019 and June 7, 2019, while he was housed at Norfolk City Jail awaiting trial. *See* Dkt. No. 13. First he alleges that on May 13, he was told to cuff up because he was being relocated within the jail. *See id.* As he walked toward the front of his cell, White alleges, the door opened and "Officer Lackey struck [him] in the face with a closed fist multiple times causing bruising to [his] eyes." *Id.* White alleges that he "began to defend [himself] by trying to get away from the deputies" and told them he would cuff up. *Id.* Once handcuffed, White continues, Lackey "pushed [his] arms all the way up" and held him that way during the walk to the next cell, which he says "caus[ed] severe pain to [his] shoulder." *Id.* Once in the new location, White adds, he was laid on the bunk for his handcuffs to be removed,

---

[2] Additionally, White moves the Court to appoint counsel. *See* Dkt. No. 35. The Court will exercise its discretion to appoint counsel only in "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). To make this determination, the Court looks at the complexity of case and the *pro se* plaintiff's ability to represent himself. *See Berry v. Gutierrez*, 587 F. Supp. 2d 717, 722–23 (E.D. Va. 2008). This case is not complex; it depends solely on White's version of events versus defendants'. White has not demonstrated that he is incapable of submitting an affidavit attesting to the events of May 13, 2019, and June 7, 2019, and whether he exhausted his administrative remedies and, thus, is incapable of representing himself. The motion for counsel therefore will be denied.

and, while on the bunk, "Officer Shildt grabbed [his] legs causing [him] to lose [his] footing and hit [his] head on the edge of the bunk," which was comprised of a metal slab. *Id.* White further alleges that he was then placed in a restraint chair, without medical attention, for four hours. *Id.*

Next, White alleges that on June 7, 2019, he was speaking with two mental health professionals at the jail about whether he would be taken off of suicide watch that day, and, while putting on his suicide smock, Officer Brooks sprayed mace into his face and then shot him with rubber bullets. *Id.* White further alleges that he then grabbed his mat to shield himself, after which Officer Tice entered the cell, "ran at [him] with a shield and hit [him] with it," then "grabbed [his] hands and arms while Officer Todd hit [him] in the face several times causing severe bruising and swelling." *Id.*

*B) Summary Judgment Record*

Defendants Deputy Lackey, Deputy Todd, Officer Brooks, and Deputy Shildt move for summary judgment and have submitted evidence into the record that contradicts White's account of the alleged assault on May 13, 2019, which he provided in the unverified, amended complaint.

Deputy Shildt attests by affidavit that on May 13, he was a zone corporal at the jail. Shildt Aff. ¶ 5. In that position he was responsible for supervising the floor housing White's cell. *Id.* Deputy Lackey attests by affidavit that on May 13 he was serving as the post supervisor for floor 2B and the leader of the jail's cell extraction team, known as PROBE. Lackey Aff. ¶¶ 4–5. Floor 2B—White's floor—includes intake inmates, inmates in disciplinary segregation, and inmates suffering mental health crises, such as suicidal ideation. *Id.* ¶ 4. Lackey explains that the PROBE team responds to disruptive inmates, inmate fights, and inmate medical emergencies. *Id.* He further attests that "[c]ell extractions are high risk because they involve highly combative

inmates in enclosed areas," so the goal of a cell extraction is "to get the inmate to calm down, cuff up, so you don't have to enter cell. [sic]" *Id.* ¶¶ 5, 7.

Deputy Shildt avers that throughout the day of May 13, 2019, White had been engaging in disruptive and self-injurious behaviors, including threatening to break a sprinkler in his cell block and hitting his metal bunk with his hand, arms, feet, and legs. Shildt Aff. ¶ 6. Around 4 pm that day, Shildt continues, he learned that White had thrown a tray at Deputy Stone. *Id.* ¶ 7; Shildt Ex. 7, Incident Report, at p. 1.[3]

Deputy Lackey attests that he then received a call over the radio to activate PROBE. Lackey Aff. ¶ 8; Defs. Ex.[4] 7, at p. 1. Deputy Shildt avers that he remained present outside of White's cell for the PROBE extraction. Shildt Aff. ¶ 9; Shildt Ex. 7, Incident Report, at p. 1; Lackey Aff. ¶ 13. The PROBE team arrived at 4:17 pm. *See* Defs. Ex. 8. Lackey attests that when he arrived at White's cell, he ordered White three times to step up to the cell door to be handcuffed, and White refused to comply with these orders. Lackey Aff. ¶ 11. Lackey further avers that White declared, "I'm not going in the fucking restraint chair without a fight." *Id.* ¶ 12.

Because White refused to comply with the orders to present himself for handcuffing, Lackey attests, he and three other officers entered White's cell, led by Deputy Stone who was holding a shield. *Id.* ¶¶ 11, 13. They entered the cell at 4:18 pm. *See* Defs. Ex. 8. Lackey avers that "[o]nce we breached the cell . . . White met us with force," and the PROBE team "yelled at

---

[3] In the incident report Shildt authored, he reported that when he went to White's cell at 4 pm, he again observed White banging himself up against his metal bunk, and that his legs and arms were red. Shildt Ex. 7, Incident Report, at p. 1. But in the video submitted into the record, which shows the events leading up to and during the extraction, White, who is in full view, is never seen banging himself against his metal bed. *See* Defs. Ex. 8. Because the video footage "utterly discredit[s]" what Shildt wrote in the incident report, the report's account of White committing self-harm at 4 pm cannot be relied on. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

[4] "Defs. Ex." refers to the exhibits submitted in support of the summary-judgment motion filed by Deputy Sheriff Lackey, Deputy Sheriff Todd, and Officer Brooks.

him to stop resisting," but "[h]e continued to resist and fight the PROBE." Lackey Aff. ¶ 13.
Lackey further attests that White "began pushing back against the shield and our entry into the
cell." *Id.* The officers pushed White into a seated position on the bed, but, Lackey avers, White
"used it as leverage to lung [sic] towards the extraction team and the open cell door." *Id.* At that
point, Lackey avers, White "was able to push his hands past the shield and hold onto the open
cell door, trying to push his way past the officers and out of his cell." *Id.* Next, Lackey attests,
"[t]he extraction team was able to push their way into the cell, causing Inmate White to fall onto
the bed," where White "fought us from a prone position" as the officers "tried to control Inmate
White's arms and legs." *Id.* Lackey adds that the extraction team eventually gained control of
White's arms so he could be handcuffed, but as they were attempting to handcuff him, "he once
again began resisting by pulling his body and arms away from us." *Id.* ¶ 16. In response, the team
pushed White against the wall, gained control of his arms, and finally handcuffed him. *Id.*[5]

Once White was handcuffed, Lackey continues, he and Deputy Stone placed White in a
"hammer lock," in which they "placed [their] hands under [White's] armpits to escort him to cell
2P06," where he was taken to be placed in a restraint chair. *Id.* ¶¶ 16, 18. According to
Deputy Shildt, while in cell 2P06, White "continued to fight the deputies" while they attempted
to remove his handcuffs and place him in the restraint chair. Shildt Aff. ¶ 10. Shildt avers that he
"assisted in holding/controlling Inmate White's legs so that he could be placed in the restraint
chair." Shildt Aff. ¶ 10. "At no point," Shildt declares, "did [he] pull on Inmate White's legs
causing him to fall and hit his head." Shildt Aff. ¶ 11.

---

[5] Defendants have submitted video footage of the extraction. *See* Defs. Ex. 8. The video does not
have sound, but the actions seen on tape corroborate Deputy Lackey's description in his
affidavit.

Additionally, Deputies Lackey and Shildt attest that White was seen by medical within twenty minutes of the extraction, which ended at 4:20 pm when White was placed in a restraint chair. Lackey Aff. ¶ 25; Shildt Aff. ¶ 13. An entry from White's medical record entered at 5:39 pm on May 13, 2019, reflects that while in the restraint chair, White had "sufficient room" underneath the straps and could wiggle fingers and toes. Defs. Ex. 3, at p. 2. The medical record also observes that White had a 1 cm abrasion on his left forehead. *Id.*, at p. 3.

Concerning the alleged assault on June 7, 2019, the defendants have not provided evidence to dispute the allegations in the complaint. Rather, they have submitted evidence in support of their argument that White did not exhaust his administrative remedies. In particular, they have submitted an affidavit from Deputy Michael Imprevento, a staff attorney for the Norfolk Sheriff's Office (NSO), and the NSO's inmate handbook, which outlines the procedures for filing grievances at the Norfolk City Jail. Imprevento Aff. ¶ 1; Def. Ex. 5, at pp. 13–14.

Deputy Imprevento attests that the inmate handbook is provided to all inmates at Norfolk City Jail. Imprevento Aff. ¶ 5. The handbook explains that, before submitting a grievance, an inmate must attempt to resolve the issue with a floor deputy or floor supervisor. Defs. Ex. 5, at p. 13. If this informal process does not resolve the issue, the team commander will provide the inmate with a grievance form. *Id.* Written responses to standard grievances are provided within seven calendar days; responses to emergency grievances are provided within twenty-four hours. *Id.* If an inmate is dissatisfied with the result, there are two levels of appellate review. *Id.*; Imprevento Aff. ¶¶ 9–10. Imprevento attests that White did not submit a grievance or emergency grievance about the events of June 7, 2019. Imprevento Aff. ¶¶ 2, 14.

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary-judgment motion, the Court views the evidence, and draws all inferences, in the light most favorable to the nonmoving party. *E.W. by T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018). The nonmoving party may not, however, rely solely on the allegations in the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)).

## III. Analysis

### A) Excessive-Force Claim: May 13, 2019

Deputies Lackey and Shildt argue that summary judgement in their favor is warranted because the undisputed evidence demonstrates that they did not apply force that was objectively unreasonable. Lackey points to the testimonial, documentary, and video evidence that shows White resisting the cell extraction with physical force. Shildt contends that, based on his testimony, no reasonable juror could conclude that he applied excessive force.

To demonstrate excessive force a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). To make this determination courts may consider the following nonexhaustive list of factors:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to

7

temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Id.* at 397.

Here, the undisputed facts do not demonstrate that Deputy Lackey applied excessive force to White. The evidence shows that when Lackey ordered White to cuff up for extraction, he refused that command three times and warned the officers that he would not get in a restraint chair "without a fight." Lackey Aff. ¶ 11. This exchange shows both the effort Lackey made to avoid using force and the threat White posed to the officers. Indeed, not only did White fail to comply with defendants' pre-entry orders, forcing the officers' entry, White also began actively resisting as soon as they entered, pushing back against an officer's shield, and lunging for the open cell door. Even though force ultimately was used during the extraction, White sustained only a 1 cm abrasion on his forehead. Moreover, Lackey attests that he "perceived White's actions of lunging towards the extraction team and trying to fight his way past the cell door as a significant safety risk because if he could get out of his cell unrestrained, he could injure himself, inmates, civilian employees, staff, and other security officers." *Id.* ¶ 15. Given this risk, the officers' use of force—pushing White onto the bed to get him away from the door; pushing White up against a barrier to secure him after he clung to the top bunk to avoid handcuffs; and then, after White broke away during handcuffing, pushing him up against a wall to get his hands behind his back—was reasonable in light of the security threat White presented. *See Bulluck v. Martin*, No. 1:20cv292, 2022 WL 179142, at *4 (W.D.N.C. Jan. 19, 2022) (concluding that defendants were entitled to summary judgment on excessive-force claim brought by pretrial detainee when uncontroverted evidence demonstrated that defendants "brought Plaintiff to the ground to regain control of Plaintiff" after plaintiff-inmate had been "aggressive and combative

and attempted to assault [defendant-officer], presenting a sufficiently serious security problem,"

and that plaintiff had suffered some swelling, bruising, and a small cut to his eyelid); *Perdue v.*

*Harrison*, No. 1:17cv403, 2018 WL 1940416, at *1, 4–5 (M.D.N.C Apr. 23, 2018) (concluding

that all *Kingsley* factors weighed in defendant-officer's favor because, among other things,

record demonstrated that that plaintiff-detainee "behaved disruptively, refused orders, pushed his

box [of belongings] into Defendant's abdomen, and then assumed a confrontational stance"

while being transferred to segregation after contraband was found in his cell; that defendant

"executed a 'bear hug' to restrain Plaintiff and place him on the ground"; and that plaintiff's

sustained "relatively minor" injuries, including "bruising, scrapes, and abrasions, and a possible

sprain, for which he was prescribed ibuprofen"). Lackey therefore is entitled to summary

judgment on the excessive-force claim against him.

Nor would the undisputed facts allow a reasonable juror to conclude that Deputy Shildt

applied excessive force to White. The only record evidence about his involvement in the cell

extraction comes from his affidavit and the report he authored. That evidence shows that while

White continued to fight the deputies who were trying to place him in the restraint chair, Shildt

"assisted in holding/controlling Inmate White's legs so that he could be placed in the restraint

chair," and that he did not pull on White's legs and cause him to fall and hit his head. Shildt Aff.

¶ 10. Given the threat White posed to the officers and the security of the institution as he

continued to actively resist, the limited force Shildt applied to help place White in the restraint

chair was, as a matter of law, reasonable. Summary judgment therefore will be granted in

Shildt's favor.

*B) Deliberate-Indifference Claim: May 13, 2019*

Deputies Lackey and Shildt also argue that summary judgment is warranted in their favor on White's deliberate-indifference claims. In particular, they urge that the assertions White makes in the amended complaint is belied by the evidence in the record, which shows that White was provided with medical care to treat a small abrasion on his forehead within twenty minutes of the cell extraction.

The Court agrees with the deputies. To prevail on a claim of deliberate indifference to a serious medical need against these defendant-officers, the evidence must show that they "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once prescribed." *Smith v. Smith,* 589 F.3d 736, 738–39 (4th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). The only evidence in the record related to White's medical care on May 13, 2019, establishes that he was seen by the medical department within twenty minutes of the cell extraction. There is no evidence that either Deputy Lackey or Deputy Shildt intentionally denied or delayed White's access to medical care. These defendants therefore are entitled to judgment as a matter of law on the deliberate-indifference claims.

*C) Excessive-Force Claim: June 7, 2019*

Finally, Deputy Todd and Officer Brooks argue that summary judgment is warranted in their favor because White did not exhaust his administrative remedies with respect to the allegation of excessive force used on June 7, 2019.

The record demonstrates that White, indeed, failed to exhaust his administrative remedies. The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies before initiating a lawsuit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *see Fauconier v. Clarke*, 966 F.3d 265, 274 (4th Cir. 2020). This requirement

10

mandates "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). Here, the undisputed evidence establishes that White failed to comply with the jail's requirement to file a regular or emergency grievance. Therefore, Deputy Todd and Officer Brooks are entitled to summary judgment on the ground the White failed to exhaust his administrative remedies.

## IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendants' motions for summary judgment, *see* Dkt. Nos. 26, 43, will be granted.

Entered this ___7th___ day of ___July___ 2022.

Alexandria, Virginia

/s/ _____
Liam O'Grady
United States District Judge